# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JASON HARRIMAN,<br><br>Defendant. | Case No. CR10-0023<br><br>ORDER FOR PRETRIAL DETENTION |

On the 8th day of November, 2010, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Robert L. Teig. The Defendant appeared personally and was represented by his attorney, JoAnne Lilledahl.

## RELEVANT FACTS

On April 2, 2010, Defendant Jason Harriman was charged by Indictment (docket number 2) with two counts of being a felon in possession of a firearm (Counts 1 and 2) and one count of receipt of a firearm by a person under indictment for a felony (Count 3). Defendant has entered a plea of not guilty and trial is scheduled before Chief Judge Linda R. Reade on January 3, 2011.

Everett "Skip" Wayland, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, testified regarding the circumstances underlying the instant charges. Defendant came to the attention of law enforcement on allegations of domestic violence against Defendant's ex-wife, Dawn Harriman. Ms. Harriman alleged that on

September 27, 2009, Defendant entered her home, assaulted her, and cut her throat with a knife.[1]

On September 28, 2009, the day following the alleged assault, police officers placed Defendant's residence under surveillance. Officers observed Defendant's blue Ford Explorer leave his residence. Officers stopped the vehicle. The vehicle was being driven by Defendant's father. The officers were given permission by Defendant's father to enter the residence in order to find Defendant. The officers found Defendant hiding behind a couch. Law enforcement then obtained a search warrant for Defendant's residence. Upon execution of the search warrant, officers found a .22 caliber rifle and ammunition.

Defendant apparently won the rifle in a raffle. Because Defendant was not permitted to possess a gun due to his status as a felon, Defendant asked his brother to put the gun in his name. Defendant intended to have the gun given to his son when he was old enough. At some point, Defendant's brother took the gun to Defendant's residence, ostensibly because Defendant complained of a problem with racoons. The rifle was left at Defendant's residence.

On October 25, 2009, Special Agent Wayland was contacted by the Mid-Iowa Drug Task Force regarding information from an individual named "Buck," who stated that Defendant was trying to purchase a handgun. Law enforcement set up an undercover operation to sell a handgun to Defendant. Buck and an undercover sheriff's deputy agreed to deliver the handgun to Defendant's residence. The arrangements for the controlled buy were made with Defendant over the phone, and in "code." The undercover sheriff's deputy and Buck met with Defendant in an out-building at Defendant's residence. Defendant asked the undercover deputy questions about the handgun, handled the weapon, and agreed that the gun would work for his needs. Specifically, Defendant stated that he

---

[1] Defendant was charged in state court with first degree burglary, attempted murder, willful injury causing serious injury, going armed with intent, domestic abuse assault (second offense) and two counts of child endangerment. Following a trial, a jury found Defendant not guilty of all charges.

only needed to use the gun "one time." Defendant paid the undercover deputy $350 for the handgun. After Defendant inquired about ammunition, other officers entered the outbuilding and arrested Defendant.

According to the pretrial services report, Defendant is 36 years old. He was born in Independence, Iowa, and has lived in northeast Iowa his entire life. His father and two brothers also reside in northeast Iowa. He is currently single, but was married to Dawn Freidhof from June 2000 to February 2008. He has two children, ages five and four, from that marriage. Both children reside with their mother in Traer, Iowa.

Due to his incarceration for the past 14 months, Defendant is currently unemployed. Prior to his incarceration, Defendant worked as a maintenance person for JBS Swift in Marshalltown, Iowa. Defendant also indicated that he was self-employed doing auto body repair work prior to his incarceration.

Defendant is in good physical health and has no past or present mental health or emotional concerns. Defendant reports no history of alcohol abuse. Defendant also denies the use of controlled substances.

Defendant has an extensive criminal record. On October 5, 1990, at the age of 16, Defendant was placed at the Iowa State Training School for Boys for operating a motor vehicle without the owner's consent. Defendant was paroled on January 18, 1991, but his parole was revoked on April 9, 1991. He was paroled again on August 6, 1991.

Between October 1992 and February 1994, Defendant was arrested nine times for driving without a valid license. Some of these arrests occurred while Defendant was on pretrial release or probation. In one instance, Defendant failed to appear for trial, and a warrant for his arrest was issued. The warrant was served, and Defendant was sentenced to 30 days in jail, with 28 days suspended, and one year probation. His probation was later revoked and he was sentenced to 30 days in jail. In another instance, Defendant was sentenced to 2 years in prison with all but 180 days suspended, and two years probation. His probation was revoked and he was sent to prison. At about that time, Defendant

received concurrent two-year prison terms in three more driving while barred cases. In November 1994, after approximately 8 months in prison, he was paroled. Two months later, his parole was revoked and he was placed in the Violators Program. Three months later, he was paroled again. His sentences were discharged on September 1, 1995.

On June 17, 1995, while still on parole, Defendant was charged and later convicted of interference with official acts and driving while barred. On June 27, he was charged and later convicted of fifth degree theft. On July 21, Defendant was charged and later convicted of interference with official acts in Buchanan County. On the same date, Defendant was charged with multiple offenses in Clayton County, and later convicted of assault causing bodily injury.

On June 17, 1996, Defendant was charged with driving while his license was suspended. Two days later, Defendant was charged again with the same offense. Five days later, on June 24, 1996, Defendant was charged with first degree kidnaping and first degree burglary. Defendant subsequently pleaded guilty to third degree kidnaping and second degree burglary. He was sentenced to 10 years in prison on each charge. On April 18, 2002, he was placed on work release, he was paroled on July 29, 2002. On January 15, 2003, his parole was revoked, and he was returned to work release. On April 11, 2003, Defendant's work release was revoked, and he was returned to prison. On March 31, 2004, he was placed back on work release. He was paroled on June 30, 2004. His parole was discharged on March 29, 2006.

On December 15, 2005, while on parole, Defendant was charged with assault. He failed to appear for his arraignment, and a warrant was issued for his arrest. The warrant was recalled, and Defendant was sentenced to two days in jail, and ordered to pay a $250 fine. On December 26, Defendant was charged and later convicted of violating a no contact order. He was sentenced to two days in jail, and ordered to pay a $50 fine.

On June 14, 2007, Defendant was charged and later convicted of domestic abuse assault. He was sentenced to 30 days in jail, with 23 days suspended. He was also given

one year probation and ordered to pay a $65 fine. On April 3, 2008, while on probation, Defendant was charged and later convicted of operating a motor vehicle while intoxicated, first offense. He was sentenced to two days in jail, and ordered to pay a $625 fine.

On September 27, 2009, Defendant was charged with first degree burglary, attempted murder, willful injury causing serious injury, going armed with intent, domestic abuse assault, second offense, and two counts of child endangerment. Defendant went to trial, and a jury found him not guilty of all the charges.

On October 25, 2009, Defendant was charged with receipt, transport, or possession of a firearm as a felon. The state charge was dismissed on October 29, 2009. These events are related to Counts 2 and 3 of the instant indictment.

On July 17, 2010, while in jail, Defendant was involved in an altercation with his father, who was also in jail at that time. Defendant was charged with willful injury causing bodily injury and domestic abuse assault, second offense. The charges remain pending in state court.

## DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). It must first determine by a preponderance of the evidence whether defendant has been charged with a certain type of offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines whether any condition or

combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

In seven enumerated circumstances, a judicial officer must hold a hearing to determine whether any release condition or combination of release conditions will reasonably assure the appearance of defendant as required and the safety of the community. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, serious drug offenses, and felonies involving minor victims. 18 U.S.C. § 3142(f)(1). The last two enumerated circumstances where a hearing is required involve "risk factors." 18 U.S.C. § 3142(f)(2). In this case, Defendant is charged with two counts of being a felon in possession of a firearm and one count of receipt of a firearm by a person under indictment for a felony, which are offenses found in § 3142(f)(1).

If, following a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). "Perhaps counter-intuitively, the government's evidentiary burden is lesser to prove a flight risk than to prove risk of harm." *United States v. Kisling*, 334 F.3d 734, 735, n.3 (8th Cir. 2003) (citing *Orta*).

In determining whether any condition of combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant;

(3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad,* 350 F.3d 793, 797 (8th Cir. 2003).

Turning to the facts in the instant action, Defendant is charged with two counts of being a felon in possession of a firearm and one count of receipt of a firearm by a person under indictment for a felony. Regarding Count 1, Defendant apparently won a rifle in a raffle. Because Defendant is a convicted felon, he could not accept the rifle. Instead, he had his brother accept it, and hoped to pass the rifle on to his son when he was old enough. Defendant's brother held the gun, but at some point took it to Defendant's residence, ostensibly because of a racoon problem, where it was left. The weight of the evidence against Defendant on counts 2 (being a felon in possession of a firearm) and 3 (receipt of a firearm by a person under indictment for a felony) is strong. It is undisputed that Defendant is a convicted felon and was under indictment for a felony on October 25, 2009, when he allegedly made arrangements to purchase a handgun from an undercover deputy in a controlled buy. The undercover deputy delivered the handgun to Defendant at Defendant's residence. Defendant asked questions about the gun, handled the gun, indicated that the gun would work for his needs, stated that he only needed to use the gun "one time," and paid the undercover deputy $350 for the gun. Significantly, Defendant was on pretrial release on an attempted murder charge, among other charges, at that time and was wearing an ankle monitoring bracelet.

Defendant has a substantial criminal record, including felony convictions and multiple violent offenses. Specifically, Defendant has been convicted of assault causing

7

injury, kidnaping, burglary, assault, and domestic abuse assault. Moreover, the majority of Defendant's crimes occurred while he was on probation, parole, or pretrial release. Defendant has a history of repeatedly violating parole and probation by re-offending. Based on the circumstances, including Defendant's history of violent behavior and failure to comply with conditions of release, probation, or parole, the Court concludes that Defendant poses a danger to the community if he is released. The Court has no confidence that Defendant would comply with any terms or conditions which it may impose for his release.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

## ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (November 4, 2010) to the filing of this Ruling (November 9, 2010) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F).

DATED this 9th day of November, 2010.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA